**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| CHELSEA VANAUKEN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:22-cv-00602 |
| JENNIFER CLARK, ARALYN HUGHES, AND TREEHUGGER HOUSE, LLC | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW Plaintiff Chelsea VanAuken,** by and through her attorney **Patrick Kane, Esq.** and alleges the following against **Jennifer Clark, Aralyn Hughes, and TreeHugger House, LLC** for violations of the Texas Deceptive Trade Practices Act and other laws.

### <u>Parties</u>

1. Plaintiff Chelsea VanAuken is an individual who resides in Boone County, Kentucky and a citizen of Kentucky.

2. Defendant Jennifer Clark is an individual and a citizen of Texas who resides in Travis County, Austin, TX. This defendant may be served at 500 Lone Oak Drive, Austin, Tx 78704.

3. Defendant Aralyn Hughes is an individual and a citizen of Texas who resides in Travis County, Austin, TX. This defendant may be served at 509 East Live Oak Street, Austin, TX 78704.

4. Defendant TreeHugger House LLC is a domestic limited liability company with a principal place of business at 500 Lone Oak Dr., Austin, TX 78704. It

1

may be served through its registered agent Jennifer Clark at 500 Lone Oak Drive, Austin, TX 78704.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a Kentucky citizen who at all relevant times maintained her primary residence in Kentucky. Defendants are Texas residents and one domestic limited liability corporation whose principal place of citizens is Texas and is registered with the Texas Secretary of State. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000.

6. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. § 1391 because all Defendants are located in this district, and a substantial part of the events, omissions, and torts on which the claims assert herein are based occurred in this District.

## Factual Background

7. Chelsea VanAuken is a registered nurse who travels across the country to assist post-partum mothers immediately following birth. Ms. VanAuken has worked as a traveling nurse for years and loves helping new mothers during their most difficult and vulnerable times.

8. The young nurse was brutalized by her wealthy landlords Jennifer Clark and Aralyn Hughes and now seeks justice for the agony they inflicted upon her.

9. On or about September 2021, hospitals in Austin, Texas sorely needed additional nursing assistance due to increased demand caused in part by the coronavirus pandemic.

10. Ms. VanAuken was recruited by a local Austin hospital to temporarily assist their post-partum recovery unit.

11. On September 9, 2021, Ms. VanAuken packed her small car and began the seventeen-hour drive from her home in Kentucky to Austin, Texas to begin a three-month nursing contract in Austin.

12. As a traveling nurse, Ms. VanAuken regularly travels to states outside Kentucky for several months at a time. Ms. VanAuken, nevertheless, maintained her primary residence in Kentucky at all relevant times, and presently maintains her primary residence in Kentucky.

13. On September 11, 2021, Ms. VanAuken arrived at a 509 East Live Oak Street, Austin, TX 78704 ("the Property") where she had rented a home for her three month stay in Austin for $6,300.

14. The seventeen-hour drive was extremely long, and Ms. VanAuken finally arrived at her newly rented home around 5 PM.

15. Upon arriving, Ms. VanAuken met Aralyn Hughes, who managed the property Ms. VanAuken rented.

16. At all relevant times, Ms. Hughes was an agent of Jennifer Clark, who owns the property lawfully rented by Ms. VanAuken.

17. Ms. Hughes welcomed Ms. VanAuken into the home and gave her possession of a key. Ms. Hughes gave Ms. VanAuken a tour, where she proudly pointed out Ms. Clark's many luxury possessions.

18. An August 23, 2021 email from Ms. Hughes boasts of the $70,000 floors Ms. Clark installed in her rental property and outlines the specialized cleaning procedures for them, and Ms. Clark's other luxury possessions, including "Mirano Glass, a Rachel Taylor Chair, original artwork, [Turkish] tapestries, brand new wood furniture bed with drawers and night stand with [a] new bed that is to die for."

19. Ms. Hughes then instructed Ms. VanAuken to leave her belongings in the bedroom she rented and then the two met in the home's kitchen.

20. Ms. VanAuken returned to the kitchen when suddenly, Ms. VanAuken was asked for the first ever time whether she had received a coronavirus vaccination by Ms. Hughes.

21. Confused by the question, Ms. VanAuken, a healthcare worker who heroically assisted our nation's hospitals all throughout the pandemic, simply and directly replied that she had not.

22. Upon hearing this, Ms. Hughes went into a panic, repeatedly proclaiming "this is all my fault . . . I assumed that you were vaccinated because you're a nurse!"

23. Ms. VanAuken told Ms. Hughes that she should not make such assumptions about people, adding that she and many of her peers and co-workers had not received a COVID vaccination.

24. Indeed, countless healthcare workers, including many medical doctors, have made the decision to not receive a coronavirus vaccination for various reasons.

25. In fact, even at the height of the pandemic, hospitals across the country did not require its healthcare workers to receive a coronavirus vaccination, including the hospital which employed Ms. VanAuken in Austin. Ms. VanAuken only sought employment at such hospitals.

26. Ms. Hughes frantically informed Ms. VanAuken that Ms. Clark had instructed her not to rent the home to any person who had not received a coronavirus vaccine.

27. Ms. Hughes admitted to Ms. VanAuken that she personally failed to inform Ms. VanAuken about Ms. Clark's alleged instructions to discriminate against certain classes of renters. Ms. Clark's own lease and email communications did not once mention this discriminatory policy.

28. A panicked Ms. Hughes told Ms. VanAuken that she would need to consult with Ms. Clark about whether Ms. VanAuken would be allowed to stay in the home she rented.

29. Ms. VanAuken left the house and went to find some food. Around 8:30 p.m. the exhausted Ms. VanAuken received an email from Ms. Hughes saying "I just spoke with my owner/boss and she said to terminate your lease . . . she said you should wear a mask when in the house for the few days it may take you to find another place . . . you are delightful and I have no problem with you, in fact, I hate to see you go. But the owner has firm opinions about the health and safety of folks living and working at this property."

30. The private medical decisions of her tenants are apparently of great personal concern to Ms. Clark. Yet, there is no provision in Ms. Clark's own lease requiring any individual to obtain any vaccine as a condition of renting the Property.

31. Only moments later, around 9:00 p.m. Ms. VanAuken suddenly received a text message from Ms. Hughes. This message stated "Darn. Owner would like you not to sleep here tonight . . . I am disappointed but it is what it is."

32. At this time, Ms. VanAuken was in a valid lease ("the Lease") with Ms. Jennifer Clark and her shell-corporation TreeHugger House LLC ("TreeHugger.")

33. The lease was a valid contract and is legally interpreted as such.

34. There is no provision in the lease requiring any individual renting the Property to have obtained any vaccine as a condition to renting. This supposed condition was also never once disclosed to Ms. VanAuken before her arrival at the Property.

35. There is likewise no provision in the Lease requiring any individual renting the Property to wear a mask if they have not received a coronavirus vaccine.

36. On August 24, 2021, Ms. Hughes emailed Ms. VanAuken a copy of the Lease to sign. Ms. Hughes stated "Sign and return. Thanks. Will be fun to see you on Sept 11. If I have left anything out I can add it or change it. Please advise."

37. Ms. VanAuken returns a signed copy of the lease later that day.

38. None of the Defendants ever reached back out to "add" or "change" the lease to include any provision that was "left out."

39. Ms. VanAuken is a nurse. When she is not selflessly helping others, she prefers to spend her time in peace. Ms. VanAuken seeks to avoid conflict. Ms. VanAuken only sought rental properties that did not advertise or require proof of vaccination, which is why she rented the Property.

40. By the plain language of Ms. Clark's own lease Ms. VanAuken was entitled to stay in the property she leased until December 11, 2021, the end date of her Lease, regardless of her coronavirus vaccination status.

41. Ms. VanAuken returned to the Property. It was then after 9 p.m. and Ms. VanAuken stood shaking and crying in the home's threshold asking Ms. Hughes where she was supposed to go in a city she had arrived in only hours ago and did not know a soul.

42. Ms. Hughes informed Ms. VanAuken that Ms. Clark would not allow the young nurse to stay a moment longer and that Ms. VanAuken would have to leave her lawfully rented home immediately, despite moments ago having told Ms. VanAuken she would be allowed a few nights to find alternate housing.

43. As Ms. Hughes stated in an August 22, 2021 email to Ms. VanAuken, "the room is very private, you can enter and go to your room without seeing anyone. Once upstairs there are no common walls. The house was designed by an architect to have apartments inside where people can be private."

44. Yet, Ms. Clark still refused to allow the weary young nurse a single night's rest in the home she paid Ms. Clark thousands of dollars for. Instead, Ms. Clark brutally evicted her young tenant without notice after 9:00 p.m.

45. Ms. Clark and Ms. Hughes knew what they were doing was not only a reprehensible breach of basic morality and civility. They also knew their actions were plainly illegal.

46. A reasonable and decent person in Defendants' shoes would see that their cruel and abrupt demands put the already exhausted and vulnerable Ms. VanAuken into a state of shock and panic.

47. Rather than allow a weary traveler a single night's rest, Defendants saw Ms. VanAuken's vulnerable state as an opportunity to further exploit and harm her.

48. While Ms. VanAuken was out of the house, Ms. Clark, who was lounging at another one of her luxurious homes miles away, had gone to work hurriedly

drafting a single page document which Ms. Clark falsely and fraudulently claims is a lease termination document.

49. Defendants informed the crying and shaking young nurse that she would have to leave the Property immediately, but first had to sign this purported single page document drafted by Ms. Clark remotely in real time.

50. Defendants falsely put the crying and shaking Ms. VanAuken under the impression that she was required to sign this document, which Ms. Clark claims absolves her from liability for her plainly unlawful same day and noticeless eviction.

51. Ms. Hughes demanded that Ms. VanAuken sign the document and then kicked her out into the street in the dead of night.

52. This document Defendants contend is a lease termination document is invalid as a matter of law for several reasons:

   a. First, Ms. VanAuken was not given a choice about whether she had to sign it. Ms. Hughes and Ms. Clark falsely and fraudulently put the crying and shaking Ms. VanAuken under the impression that she was under a legal duty to do so, even though she was not. Defendants are professional landlords, Ms. VanAuken is not. Ms. VanAuken was told she had to sign the document, even though Defendants knew this was a lie. Contracts obtained by fraud are invalid as a matter of law.

   b. Second, the document was not voluntarily signed. Rather it was procured under duress and is *per se* invalid. This single page document was drafted in real time by Ms. Clark at her other luxurious personal residence miles away. Ms. Clark knew that her actions violated several state and federal laws and took affirmative steps to try and mitigate what she knew was massive civil liability. Ms. Clark then instructed Ms. Hughes to obtain Ms. VanAuken's signature on the document although she was clearly under extreme emotional stress caused by Defendants. Ms. Hughes dutifully obeyed Ms. Clark, whom she believed to be her friend, not realizing that Jennifer Clark was causing

Ms. Hughes to incur massive personal liability herself for the sole benefit of Ms. Clark and at the personal peril of Ms. Hughes. Contracts that are not entered into voluntarily are invalid as a matter of law.

c. Ms. VanAuken was crying and shaking at the time Defendants procured her signature by duress. Any reasonable observer could tell that Ms. VanAuken was in a state of shock and extreme emotional distress. Ms. Hughes and Ms. Clark's actions would put any reasonable person in a state of extreme fear, panic, shock, and exhaustion. It was then after 9 p.m. and the exhausted Ms. VanAuken was being commanded to pack up her car and find last minute lodging somewhere in a city she had never been and did not know a soul. Rather than be deterred by Ms. VanAuken's obvious state of panic and duress, Jennifer Clark sickeningly saw it as an opportunity to absolve herself of the liability she knew she was creating. Contracts obtained by duress are invalid as a matter of law.

d. Fourth, for the reasons stated above, Ms. VanAuken's extreme state of distress and duress means that she lacked the legal capacity to enter into a valid contract at the time she signed Defendant's fraud document.

53. Once, Defendants had successfully obtained the visibly distraught young nurse's signature on the document Defendants threw the young nurse Chelsea VanAuken onto the street – knowing it was then past 9 PM; knowing that Ms. VanAuken did not know anyone in Austin; knowing that Ms. VanAuken did not have any place to stay; knowing that Ms. VanAuken was exhausted from her seventeen hour drive; knowing that it was likely Ms. VanAuken would likely not be able to obtain lodging at such short notice; knowing that Ms. VanAuken was even more exhausted from the intense fear and panic caused by their cruelty; knowing that their heinous actions would put any reasonable person into a state of extreme fear, distress, and panic; knowing it was reasonably foreseeable that the state Defendants put Ms.

VanAuken into put her in significant physical and psychological danger; knowing that it was reasonably foreseeable that kicking a distraught young woman into the streets of a strange city could result in a catastrophic tragedy; knowing that they could be liable for criminal negligence were Ms. VauAuken physically assaulted while in the weakened state they knowingly and intentionally placed her in.

54. Ms. VanAuken is a healthcare hero who put herself at tremendous risk to protect people like Jennifer Clark at the heights of the pandemic.

55. Jennifer Clark is a professional landlord who lives a very comfortable life off substantial passive income from her luxurious rental properties.

56. This lawsuit is not about the efficacy of any vaccine or whether any individual should receive any vaccine. This lawsuit is not about, and does not implicate, broader public policy respecting the serious coronavirus pandemic.

57. This lawsuit is about honest business practices, honoring one's contractually recorded word, and a recognition of basic human decency even during difficult times.

58. Ms. VanAuken chose to work at her particular employer in Austin, Texas because it did not require workers to receive a coronavirus vaccination as a condition of employment. Ms. VanAuken has turned away enthusiastic recruitment offers from hospitals that do require staff to receive a coronavirus vaccination.

59. When selecting homes to rent in Austin, Ms. VanAuken did not inquire into renting any home that disclosed a vaccine requirement as a condition of renting.

60. Ms. VanAuken avoids conflict and would have chosen a different home to rent had Ms. Clark been honest about her intentions to discriminate against certain classes of renters, such as healthcare workers like Ms. VanAuken.

61. Tragically, Ms. Clark was not honest. Ms. Clark chose deception and meanspirited cruelty rather than afford Ms. VanAuken the basic human decency of allowing a weary traveler a single night's rest.

9

## CAUSES OF ACITON
### Respondeat Superior

62. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

63. At all relevant times Ms. Clark and Ms. Hughes were agents of Treehugger for the purposes of vicarious liability.

64. At all relevant times Ms. Hughes was an agent of Ms. Clark for the purposes of vicarious liability.

65. At all relevant times, Ms. Hughes and Ms. Clarks' actions were committed within the scope of their respective employments.

66. At all relevant times, Ms. Hughes' and Ms. Clarks' actions were committed in furtherance of their respective employers' business and for the accomplishment of the object or purposes for which they were hired.

67. Ms. Clark is liable for Ms. Hughes' torts respecting Ms. VanAuken.

68. Treehugger House LLC is liable for Ms. Hughes' and Ms. Clark's torts respecting Ms. VanAuken.

69. Ms. Hughes is also individually liable for her own torts and for the torts she committed under her supposed friend's direction.

70. Ms. Clark is also individually liable for her own torts.

71. The Defendants are jointly and severally liable for their tortious actions.

### Count One: Violation of Texas Property Code § 92.0081 (Against All Defendants)

72. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

73. Per Texas Prop. Code § 92.0081(b) a landlord "may not intentionally prevent a tenant from entering the leased premises except by judicial process unless the exclusion results from bona fide repairs, construction, or an emergency; removing the contents of premises abandoned by a tenant; or changing the door locks on the door to the tenant's individual unit of a tenant who is delinquent in paying at least part of the rent."

74. Per Texas Prop. Code § 902.0081(h) if a landlord violates the above a tenant may recover a civil penalty of one month's rent plus $1,000, actual damages, court costs, and reasonable attorney's fees in an action to recover property damages, actual expenses, or civil penalties.

75. All of the Defendants are listed as landlords on the Defendant's lease.

76. At the time of the forceful eviction Defendants were Ms. VanAuken's landlords, having voluntarily entered into a lease with Ms. VanAuken.

77. By forcefully evicting a crying, shaking, and exhausted Ms. VanAuken in the dead of night, and not allowing her to return, Defendants intentionally prevented Ms. VanAuken from entering the premises after her forceful eviction in violation of Texas Prop. Code § 92.0081(b) as they confiscated her house keys by threat, fraud, deception, and duress.

78. As a traveling nurse, Ms. VanAuken is a lay person respecting landlord tenant law. She was not aware that Defendants' actions were patently illegal and her sudden unannounced eviction demand legally amounted to nothing more than a toothless request without a judicial eviction order.

79. Defendants are professional landlords. As such they were significantly more knowledgeable than Ms. VanAuken, a humble young nurse, about issues of landlord tenant law.

80. Defendants knew that they could not lawfully terminate a lease on its first day for a breach of a new contractual term they unilaterally attempted to add after the lease was already signed.

81. Defendants abused their position of trust, preyed upon the extremely vulnerable state they placed Ms. VanAuken into, and weaponized their superior knowledge of the law to put Ms. VanAuken under the impression she was required to leave the property when in fact she was not.

82. Were it not for Defendants knowing and intentional deceptions, Ms. VanAuken would not have left the property she lawfully rented that night.

83. Ms. VanAuken involuntarily left the premises solely due to Defendants' threat, fraud, and duress and was not allowed back in as Ms. Hughes confiscated her house key and demanded her to not return.

84. Defendants intentionally prevented Ms. VanAuken from entering her lawfully rented home, solely due to her vaccination status, and in violation of their own Lease.

85. None of Ms. VanAuken's behavior that night qualify as an exclusion under 92.0081(b)(1)-(3).

86. Ms. VanAuken did not violate any terms of the Lease. Indeed, Ms. VanAuken did nothing wrong other than enter into a contract with the fraud Jennifer Clark.

### Count 2: Intentional Infliction of Emotional Distress (Against All Defendants)

87. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

88. Ms. Clark and Ms. Hughes intentionally and recklessly chose extreme and outrageous actions which caused Ms. VanAuken severe emotional distress.

89. Defendants' outrageous actions caused Ms. VanAuken to shake and cry.

90. Defendants' outrageous actions caused Ms. VanAuken extreme humiliation.

91. Defendants' outrageous actions caused Ms. VanAuken emotional trauma which she still deals with to this day.

92. Defendants' outrageous actions forced Ms. VanAuken to seek last minute lodging in one of the hottest real estate markets in the world. Of course, Ms. VanAuken was not able to find comparable lodging in Austin with zero notice. Ms. Clark's cruelty forced Ms. VanAuken to rent a home in Bastdrop, nearly 45 minutes outside of the city in light traffic.

93. Ms. VanAuken is a traveling nurse because she loves helping people and loves exploring the world around her. The wealthy Ms. Clark's self-righteous cruelty robbed the humble Ms. VanAuken of an ability to experience Austin in the way she intended to when she took a contract in Austin.

94. The wealthy Ms. Clark brutalized a young nurse who had done her no wrong. Defendants' actions caused Ms. VanAuken to consider quitting nursing altogether, thereby potentially depriving the healthcare system of essential workers to fight the pandemic. Defendants did this ironically and incoherently in the name of public health.

95. Ms. Hughes knew that at minimum, basic human decency required her to allow Ms. VanAuken at least "a few days" to find alternate lodging; even though Ms. VanAuken was entitled to stay at the Property for the entire length of the Lease.

96. Regrettably, Ms. Clark and Ms. Hughes chose not to exhibit basic human decency. In a self-induced fever of hysterical cruelty, Defendants told Ms. VanAuken she would be allowed to stay at the Property for a few days at 8:30 p.m. only to tell her she would be forced to leave that very night thirty minutes later.

97. Ms. Clark knew that her actions were illegal and would lead to massive civil liability. This is why Ms. Clark drafted what she fraudulently purports to be a single page lease termination document. This is also why Ms. Clark demanded Ms. Hughes obtain Ms. VanAuken's signature on the fraud document at all costs.

98. It was not enough for Defendants to kick Ms. VanAuken out in the middle of the night. They then sought to relieve themselves of the civil liability they knew they were creating. This shows malice, knowledge, intent, and premeditation.

99. Defendants' actions crossed all lines of decency in a polite and civilized society.

100. A reasonable and decent person would abide by their word and their contractual guarantees. A reasonable and decent person would see a crying and exhausted young woman in desperate need of a safe and restful night's sleep and would help her, not brutalize her. A reasonable and decent person would have seen Ms. VanAuken's extremely fragile and rapidly deteriorating

state and at least allow her a single night's rest in her rented home before illegally evicting her.

101. After Ms. Hughes forcefully evicted Ms. VanAuken she sent Ms. VanAuken an email that read as such: "What do you want? Surely we don't need attorney (sic) fees. Just for clarity, please consider this 30 days (sic) notice to vacate if you think we are still in a lease."

102. Defendants knew that one cannot serve a 30 day's notice to vacate *after* forcefully evicting someone. By sending this email, Defendant Clark admits via the admission of her agent Ms. Hughes that she knew she had to give Ms. VanAuken notice to evict her, but did not.

103. Defendants' comments about "attorney's fees" once again shows that Defendants knew their actions were illegal and how Defendants were more concerned about money than the health of a young nurse.

104. The tone of Ms. Hughes' email drips with palpable disdain for an innocent nurse who had done her no wrong but had nonetheless chosen to traumatize.

105. Jennifer Clark has no one to blame for this lawsuit but herself.

**Count 3: Breach of Contract (Against All Defendants)**

106. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

107. Ms. VanAuken signed a lease with Ms. Clark. Ms. VanAuken offered to rent Ms. Clark's home between September 11, 2021 to December 11, 2021 for $6,300. Defendants accepted Ms. VanAuken's offer. The contract was finalized soon thereafter when both parties signed a written lease agreement.

108. There is no provision in the Lease requiring a renter to receive a coronavirus vaccination as a condition of renting the Property. Such a term is material and would be material to a renter in deciding where to spend thousands of dollars in rent.

109. There is no provision in the Lease requiring any renter, vaccinated for the coronavirus or otherwise, to wear a mask as a condition of renting the Property.

110. Ms. VanAuken performed her obligations under the contract by paying the requested sum and security deposit.

111. Ms. VanAuken did not breach any term of the contract and performed her obligations under the contract.

112. Defendants broke their own Lease by forcefully evicting Ms. VanAuken even though Ms. VanAuken did not break any term of Defendants' lease.

113. Defendants apparently attempted to unliterally add an additional material term into the contract to justify their forceful, noticeless, and illegal eviction.

114. Defendants breached the contract by subjecting Ms. VanAuken to a vicious and illegal eviction when they knew she was entitled to stay at the Property.

115. It is beyond dispute that Ms. Clark had no legal authority under the Lease or the Texas Property Code to try and unilaterally add a new provision into the contract.

116. Ms. Hughes admitted that Ms. VanAuken was not given any notice of Defendant Clark's demand that all renters receive a coronavirus vaccination.

117. Accordingly, Ms. Clark admitted that Ms. VanAuken was not given any notice of Defendant Clark's demand that all renters receive a coronavirus vaccination, by vicarious agent admission.

118. Ms. Hughes admitted that the whole situation was "all her fault" because she assumed Ms. VanAuken had received a coronavirus vaccination solely because she was a nurse. Though this does not change the fact that Defendants' own Lease does not mention this supposed requirement.

119. Defendants' action caused Ms. VanAuken significant damages, as discussed in detail below.

120. An attorney representing the Defendants wrote to undersigned counsel on February 11, 2022 and stated: "Ms. VanAuken was required only to be vaccinated or wear a mask when she is in the house. Her vaccination status

was not a pre-requisite for renting." First, Defendants Jennifer Clark and Aralyn Hughes' representations are false and readily disproven. Second, Ms. VanAuken was not "required" to do either as there is no such requirement in Defendant's own Lease.

121. Defendants were quick to inform Ms. VanAuken about the special cleaning protocols required to care for Ms. Clarks' $70,000 floors. Yet, did not once inform Ms. VanAuken that she would not be allowed to stay a single night in the home she rented for three months if she did not receive a vaccine, or wear a mask without one.

122. Accordingly, Defendants own attorney admitted that Defendants breached their own contract by attempting to add an additional material term after the contract was finalized *i.e.* a requirement to obtain a vaccine or wear a mask in order to stay at the Property.

123. Given the above, Ms. VanAuken is entitled to attorney's fees from Defendants following an inevitable victory for breach of contract.

### Count 4: Fraud in Real Estate (Against All Defendants)

124. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

125. Texas Business and Commerce Code Ann. § 2701(a) establishes a statutory cause of action for fraud in real estate transactions to protect renters from unscrupulous landlords like Jennifer Clark.

126. Defendants made a false representation of an existing material fact to Ms. VanAuken for the purpose of inducing her to enter into a contract that was relied upon by Ms. VanAuken when entering into that contract.

127. Defendants' own written contract given to Ms. VanAuken stated that Ms. Clark agreed Ms. VanAuken was entitled to reside at the Property from September 11, 2021 to December 11, 2021 in exchange for $6,300.

128. Defendants knew that their own Lease stated she would allow Ms. VanAuken to stay at the Property without any vaccination requirement. Defendants also

knew that their own lease did not contain any language requiring any renter to obtain any vaccine or constantly wear a mask as a condition of renting.

129. Defendant Clark made these written Lease representations to Ms. VanAuken knowing that Ms. VanAuken would rely on them to know the precise terms of the Lease and with the purpose of inducing Ms. VanAuken to enter into a contract to lease her property.

130. Defendant Clark also knew that she intended to discriminate against renters like Ms. VanAuken without any contractual right or notice.

131. Yet, Ms. Clark represented to Ms. VanAuken that she was all ready to move in.

132. Indeed, Ms. Hughes repeatedly messaged Ms. VanAuken that she and Ms. Clark were excited to be hosting another travel nurse.

133. A lack of contractual requirement to receive a vaccination was material to Ms. VanAuken's decision to enter into the leasing contract with Defendant Clark.

134. Ms. VanAuken relied on Defendants' own written representations about the conditions to leasing the Property when deciding where to rent.

135. But for Defendants' false representations in their written contract and agent's communications, Ms. VanAuken would have happily found a different place to live.

### Count 5: Negligence (Against All Defendants)

136. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

137. Defendants owed Ms. VanAuken a reasonable duty of care of a reasonable landlord under reasonably similar circumstances.

138. Defendants owed Ms. VanAuken the same duties any landlord owes to any tenant in the State of Texas. Under Texas law, one cannot evict a tenant without any notice, especially when that tenant did not violate any contractual term. The State of Texas provides strict eviction procedures designed to protect both landlords and tenants. Defendants knew about these laws, but

disregarded them, and caused Ms. VanAuken severe emotional distress, loss of opportunities, and financial harm.

139. Defendants breached that duty of care by failing to inform Ms. VanAuken of what they maintain is a material term outside of the written Lease that was never disclosed to Ms. VanAuken.

140. Defendants breached that duty of care when she forcefully evicted Ms. VanAuken solely due to her coronavirus vaccination status in the middle of the night despite having no contractual or legal authority to do so.

141. No reasonable person would throw a sobbing and shaking young woman into the street of a strange new city without a place to go in the middle of the night. Any reasonable landlord would know that this was illegal without a court order.

142. Defendants knew that their actions violated the law as shown by Defendants forcing Ms. VanAuken to sign what they falsely purport to be a "lease termination document" which Ms. Clark maintains absolves her from all liability for her despicable actions.

143. Defendants owed Ms. VanAuken an additional affirmative duty of care over Ms. VanAuken as Defendants' actions directly and proximately caused the already exhausted and sleep deprived Ms. VanAuken into a state of panic and extreme distress.

144. By placing Ms. VanAuken into this extremely vulnerable state, knowing Ms. VanAuken was already in a vulnerable state, Defendants assumed a duty of care to prevent Ms. VanAuken from becoming harmed and traumatized further.

145. Defendants breached that duty of care by throwing her out onto the street in the middle of the night.

146. Defendants breached that duty of care by intentionally inflicting severe and extreme emotional distress to Ms. VanAuken.

147. Defendants knowingly and intentionally put Ms. VanAuken at a tremendously increased risk of physical harm.

148. Defendants' actions directly and proximately caused Ms. VanAuken to suffer damages, which will be discussed more below.

### Count 6: Negligence *Per Se* (Against All Defendants)

149. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

150. Defendants owed Plaintiff the duty of care not to violate Tx. Bus. and Comm. Code Ann. § 2701(a).

151. Defendant breached that duty by violating the statute, as discussed above in Count 4.

152. Defendants owed Plaintiff the duty of care not to violate Texas Prop. Code § 92.0081(b).

153. Defendants breached that duty by violating the statute, as discussed above in Count 1.

154. Defendants owed Plaintiff the duty of care not to violate the Texas Business Commerce Code, but breached that duty as described below in Count 7.

155. Defendants both directly and proximately caused damages to Ms. VanAuken as described below by breaching these statutes.

156. Defendants' breach of these three statutes caused Ms. VanAuken damages.

### Count 7: Violations of the Texas Deceptive Trade Practices Act (Against All Defendants)

157. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

158. Texas Business Commerce Code ("TBCC") § 17.44(a) provides that the Texas Deceptive Trade Practices Act ("DTPA") "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."

159. TBCC § 17.50(a) provides that "a consumer may maintain an action where any of the following constitute a producing cause of economic damages or

damages for mental anguish (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and (B) relied on by a consumer to the consumer's detriment; (2) breach of an express or implied warranty; (3) any unconscionable action or course of action by any person."

160. At all relevant times, Ms. VanAuken was a consumer as defined by the TBCC as she was an individual who sought or acquired by purchase or lease, a "good" as it is defined by the TBCC.

161. The Property and the Lease are expressly considered "goods" under the TBCC which defines this term as a "tangible chattels or real property purchased or leased for use."

162. The Property is a piece of real property which Ms. VanAuken leased.

163. TBCC § 17.46 provides a non-exhaustive "laundry list" of violations which are defined as "false, misleading, or deceptive acts or practices." Defendant's unconscionable conduct violates the following laundry list provisions of the DTPA:

   a. Defendants violated TBCC § 17.46(b)(9) by advertising the room Ms. VanAuken rented without including notice or warning that renters were required to wear masks inside the property, receive a coronavirus vaccination, or undergo any other medical procedure as a condition to staying in the Property. Ms. Clark knew that she intended to mercilessly apply this undisclosed policy to all renters while also knowing that her Lease did not require it, or even give notice of it. Below Plaintiff lists several advertisements for the Property, which Ms. Clark made with the intention of not selling the Property as advertised *i.e.* without a vaccination requirement.

      i. The written Lease agreement served as an advertisement for a good, the Property, that was not intended by Defendants to be sold as advertised. Defendants provided Ms. VanAuken with the

20

Lease which contained no vaccination and/or mask policy. Ms. Hughes expressly stated to Ms. VanAuken that she would reach back out if she omitted anything in the Lease, but did not. Defendants repeatedly confirmed that Ms. VanAuken was all set to move in. Yet, Defendants illegally evicted Ms. VanAuken in the middle of the night on her first day of the Lease for allegedly not following what they claim to be a contractual term that was never disclosed to Ms. VanAuken, as admitted by Ms. Hughes. Thus, Defendants advertised the Property for sale via the written Lease agreement, and the subsequent solicitation emails, with the intention not to sell the Property as advertised.

ii. On August 24, 2021, Ms. Hughes told Ms. VanAuken that she would "add" or "change" the Lease if she "left anything out." Ms. Hughes never made any changes, and never informed Ms. VanAuken about the alleged undisclosed vaccine policy. Ms. Hughes did, however, make sure that Ms. VanAuken knew that she was required to pay a substantial cleaning fee for Ms. Clark's $70,000 floors, concluding her email by saying "I hope you are still on board." Before signing the Lease, Ms. Hughes was sure to let the young nurse know that paying substantial fees to care for Ms. Clark's $70,000 floors and chic Mirano glass was a condition to the contract. Ms. VanAuken agreed. Yet, Ms. Hughes didn't mention that Defendants intended to viciously throw the young nurse out into the street if she did not have a covid vaccination. Defendants' multiple pre-contract emails, which did not mention Defendants purported vaccine policy, and where Defendants sought to induce Ms. VanAuken's rental, were also advertisements that Defendant did not intend to honor.

21

b.  Defendants violated TBCC § 17.46(b)(12) by representing the Lease conferred onto Ms. VanAuken the right to stay in the property from September 11, 2021 to December 11, 2021 without any mask or vaccination requirements, even though Defendants have admitted they did not intend to honor the terms of their own contract as written.

    i.  Likewise, the many communications between Defendants and Ms. VanAuken before her arrival indicating she was set to move in were representations that Defendants lease conferred obligations onto Ms. VanAuken that she did not have *i.e.* the right to peacefully enjoy the room she rented without being subjected to Ms. Clark's vicious and illegal eviction.

    ii.  A communication dated September 11, 2021 from Ms. Hughes and Jennifer Clark stated that Ms. VanAuken was being served with a "notice to vacant [sic] ASAP." This communication was intentionally false and designed to dupe Ms. VanAuken into believing she had an obligation to leave and not return to the property, when it is beyond dispute she was not under any such obligation. Conversely, this deceptive communication represents that the Lease conferred onto Defendants the right to evict Ms. VanAuken without any notice, something the wealthy and professional landlords knew to be false. Likewise, this communication represented that the Lease conferred onto Defendants the remedy and right to evict a lawful tenant without any notice, even though this is plainly prohibited by law and Defendant's own contract.

    iii.  Additionally, the false and fraudulent "lease termination document" was a representation by Defendants that the document conferred onto Defendants' the right to terminate the Lease, even though they knew the document was illegitimate and procured by threat, fraud, and duress. Likewise, Defendants

falsely represented that the "lease termination document" conferred onto Defendants the right to unlawfully evict Ms. VanAuken without any notice, even though Defendants knew this to be false.

iv. The communications by Defendant's attorney that Ms. VanAuken was required to wear a mask or have a vaccine as a condition to staying at the Property, even though this is patently contradicted by Defendant's own Lease, is also a representation by Defendants that the Lease conferred onto Ms. VanAuken an obligation that she did not have *i.e.* an obligation to either have a vaccine or wear a mask to stay in the Property without being subject to a vicious and noticeless eviction. Defendants only claim this now that it is in their financial interests to do so.

164. TBCC § 17.50 also providers that "a consumer may maintain an action where any of the following constitute a producing cause of economic damage or damage for mental anguish" including "any unconscionable action or course of action by any person."

165. TBCC § 17.45(5) defines an "unconscionable action or course of action" as an "act or practice, which to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

166. Defendants' conduct was unconscionable under the TBCC and DTPA.

167. Jennifer Clark is a professional landlord who makes a substantial living renting out her many luxurious properties to low-income renters like Ms. VanAuken. Indeed, Ms. Clark specifically seeks to rent her home to traveling nurses, who she knows to be significantly less economically powerful than her.

168. The fabulously wealthy Jennifer Clark is an expert respecting Texas landlord tenant law. Of course, Ms. Clark knows that a landlord cannot evict a tenant without any notice, especially when the tenant has not violated a single term of the Lease.

169. Ms. Hughes likewise is a professional property manager in Texas. TreeHugger is a shell corporation that exists solely to facilitate Ms. Clark's real estate empire.

170. Ms. VanAuken is a Kentucky based nurse and knew nothing about Texas landlord-tenant law in September 2021.

171. Defendants knew Ms. VanAuken had just completed a seventeen-hour drive when she arrived at the Property. Defendants knew that they sought to illegally evict Ms. VanAuken the day of her arrival at 9 p.m. Defendants knew that this cruel course of action placed Ms. VanAuken into a state of panic, shock, terror, humiliation, anguish, and distress. Rather than allow a weary young woman a single night's rest, Defendants saw Ms. VanAuken's weakened state as an opportunity to further exploit her.

172. Defendants knew Ms. VanAuken didn't know she had no obligation to abide by any policy that was never disclosed to her or that was not included in the Lease. Defendants also knew that Ms. VanAuken didn't know that she was under no obligation to leave the Property that night and find alternative lodging at her own expense. Ms. VanAuken would not have done so butfor Defendants unconscionable conduct.

173. Defendants took advantage of Ms. VanAuken's lack of knowledge, ability, experience, and capacity to a grossly unfair degree while illegally evicting her.

174. Defendants further took advantage of Ms. VanAuken's lack of knowledge, ability, experience, and capacity to a grossly unfair degree while forcing the shaking and crying young nurse to sign a purported "lease termination document," under fraud, threat, and duress.

175. Finally, Defendants' own lease created an express warranty that the Lease and its terms would be honored. Defendants breached this express warranty when they suddenly evicted Ms. VanAuken without any contractual or legal authority.

176. Ms. VanAuken relied on the false, misleading, and deceptive acts and practices discussed above and herein to her detriment when entering into the Lease Defendant's unconscionably broke on its first day.

177. At all relevant times, Defendants acted knowingly and intentionally as defined by the TBCC and DTPA. Defendants knew their actions violated multiple different laws. This is why Defendants coerced a sobbing and shaking Ms. VanAuken to sign a so-called "lease termination document," which purports to end the lease and release Defendants from liability. This is also why Defendants attempted to serve Ms. VanAuken with a 30 days' notice, after she was already forcefully and unlawfully evicted.

178. Accordingly, Chelsea VanAuken is entitled to treble damages.

179. Defendant Jennifer Clark and TreeHugger House LLC was served with statutory notice of a DTPA claim per TBCC § 17.505 on October 22, 2021.

180. Defendant Aralyn Hughes was served with statutory notice of a DTPA claim per TBCC § 17.505 on October 22, 2021.

**Count 8 Civil Conspiracy (Against Ms. Clark and Ms. Hughes)**

181. Ms. Clark and Ms. Hughes conspired to violate the various state statutes discussed above.

182. Ms. Clark and Ms. Hughes had a meeting of the minds during their communications together while Ms. VanAuken was out of the house.

183. In a sordid attempt to cover herself from the massive civil liability she knew she was incurring, Ms. Clark drafted what she falsely purports to be a lease termination document in real time as Ms. VanAuken was crying asking Ms. Hughes where she was supposed to sleep that night.

184. Ms. Clark then instructed her so-called friend Ms. Hughes to obtain Ms. VanAuken's signature on this document by threat, fraud, and duress.

185. Defendants conspired to violate Texas Prop. Code § 92.0081; Texas Business and Commerce Code Ann. § 2701(a); and the DTPA during their meeting of the minds via text, emails, and phone calls. Ms. Clark took overt steps to further

the conspiracy by drafting the fraudulent lease termination document and instructing Ms. Hughes to confiscate Ms. VanAuken's keys.

186. Ms. Hughes took affirmative steps to further the conspiracy by fraudulently putting Ms. VanAuken under the mistaken belief that Ms. VanAuken was not entitled to stay at the Property, that Ms. VanAuken was required to leave the property that very night, that Ms. VanAuken was required to sign Ms. Clark's fraudulent document before doing so, and by forcefully confiscating Ms. VanAuken's keys to the Property she was lawfully entitled to stay at.

187. Ms. Clark and Ms. Hughes specifically met and conspired to unlawfully evict Ms. VanAuken by threat, fraud, and duress.

188. Ms. Clark and Ms. Hughes' met to conspire to violate the aforementioned statutes and other laws by unlawful means, as described herein. Defendants' civil conspiracy caused Ms. VanAuken significant damage, as discussed more below.

**Damages**

189. Plaintiff re-alleges and reincorporates the above as if fully set forth fully herein.

190. Defendants' unconscionable actions directly and proximately caused Ms. VanAuken economic and mental anguish damages.

191. The Lease was for $6,300. Ms. VanAuken leased the Property because of its proximity to her employer, its location in the city of Austin, and its quality. Defendants unlawfully evicted Ms. VanAuken on the very first night of the contract. Naturally, Ms. VanAuken was not able to find comparable housing with zero notice in one of the nation's most popular and competitive real estate markets. Accordingly, she is entitled to the entire sum under the contract.

192. As a result of Defendants' actions, Ms. VanAuken was forced to incur hotel costs which totaled $553.53.

193. As a result of Defendants' actions, Ms. VanAuken was forced to find lodging in Bastrop, Texas. While Bastrop is a beautiful city, it is extremely rural and very far from Ms. VanAuken's employer. Bastrop has a current population of

8,776 while Austin has a population of 950,807. Ms. VanAuken was not able to find comparable lodging to the Property in Austin without any notice.

194. Ms. VanAuken's employer is approximately 25 miles away from her new home in Bastrop. Accordingly, Defendants forced Ms. VanAuken to commute 50 miles in Austin's notorious rush hour traffic to work. Ms. VanAuken would commute to Austin for work a minimum of 50 miles a day three days a week for 13 weeks and 1 day. At the going mileage compensation rate of $0.56 a mile, Ms. VanAuken is entitled to a minimum of $1,100 for the mileage costs she incurred as a result of Defendant's actions.

195. Ms. VanAuken is also entitled to the cost of her time that she was forced to commute from her home in Bastrop in the amount of $2500.

196. Ms. VanAuken also incurred approximately $1,000 in miscellaneous costs associated with reassembling her life after her horrific treatment at the hands of Defendants.

197. In sum, Ms. VanAuken's economic damages are at minimum $10,891.93.

198. Ms. VanAuken is entitled to treble economic damages as Defendants acted knowingly and intentionally. According, Ms. VanAuken's economic damages under the DTPA trebled are $32,675.79.

199. Ms. VanAuken's mental anguish and emotional distress damages are $30,000.

200. Ms. VanAuken is entitled to treble mental anguish damages as Defendants acted knowingly and intentionally. Accordingly, Ms. VanAuken's mental anguish damages are $90,000.

201. The Defendants acted with malice and were grossly negligent in their forceful eviction of Ms. VanAuken. The Defendants likewise fraudulently put the shaking and crying Ms. VanAuken under the mistaken belief that she was required to sign what they purport to be a "lease termination." Defendants actions were so heinous that Ms. VanAuken is entitled to punitive, exemplary damages. Ms. VanAuken seeks such damages in the amount of $200,000.

202. Plaintiff is entitled to costs and attorney's fees under the Texas Deceptive Trade Practices which Plaintiff will prove before a jury.

203. In sum, Defendants are liable to Ms. VanAuken for $322,675.79 before attorney's fees, costs, and interest.

204. Defendants are jointly and severally liable for the entire sum of Plaintiff VanAuken's damages.

## Prayer For Relief

205. Under the DTPA, consumers are entitled to recovery for economic and mental anguish damages. Consumers are entitled to treble recovery for economic damages when a defendant acts knowingly, as is the case here. Consumers are also entitled to a treble recovery for mental anguish damages when a defendant acts intentionally, as is the case here.

206. Under the DTPA, prevailing consumers are entitled to attorney's fees and costs.

207. Plaintiff is entitled to attorney's fees against all Defendants under Texas Civil Practices and Remedies Code § 38.001(b)(8) as at least one of Ms. VanAuken's claims arise from an oral or written contract.

208. Plaintiff is also entitled to attorney's fees and costs under Texas Prop. Code §902.0081(h).

209. Plaintiff prays for pre and post judgement interest;

210. For costs incurred herein; and

211. For such other and further relief as the Court deems just and proper.

## Jury Demand

212. Plaintiff Chelsea VanAuken demands a trial by jury against Defendants.

Respectfully submitted on June 21, 2022.

**THE BERNHOFT LAW FIRM, S.C.**
Attorneys for Chelsea VanAuken

By:   /s/ Patrick Kane
       Patrick Kane, Esq.

1402 E. Cesar Chavez Street
Austin, Texas 78702
telephone: (512) 582-2100
facsimile: (512) 373-3159
ptkane@bernhoftlaw.com